# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 91 C 699 | **DATE** | 9/28/2001 |
| **CASE TITLE** | Reese Price vs. Code-Alarm, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 10/5/2001 at 9:00 A.M.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: This matter is now before the Court on Plaintiff's Motion to Reopen Case, to Enforce Terms of Settlement Agreement, Granting Partial Judgment, and an Order Compelling Discovery. The Court is, at this time, only ruling on the issues of res judicata and estoppel raised in Price's motion. The Court finds that Judge Kocoras' February 28, 1994 Order dismissing Price's claims does have res judicata effect as to the enforcement of the Terms Agreement entered into by the parties.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | OCT 01 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| KM/c courtroom deputy's initials | | 01 SEP 28 PM 4:39 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REESE PRICE, an individual, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 91 C 0699 |
| ) | |
| ) | Magistrate Judge Nan R. Nolan |
| CODE-ALARM, INC., and TRIANGLE MOBILE ) | |
| ELECTRONICS, ) | |
| ) | |
| ) | |
| Defendants. ) | |

DOCKETED
OCT -1 2001

## MEMORANDUM OPINION AND ORDER

This patent infringement case is before this Court on Plaintiff, Reese Price's ("Price") motions to enforce a settlement agreement that was entered into between Price and Code Alarm, Inc. ("Code Alarm") on February 28, 1994. This matter is now before the Court on Plaintiff's Motion to Reopen Case, to Enforce Terms of Settlement Agreement, Granting Partial Judgment, and an Order Compelling Discovery (Docket Entry #266). As is explained more fully below, the Court is, at this time, only ruling on the issues of res judicata and estoppel raised in Price's motion. For the following reasons, the Court finds that Judge Kocoras' February 28, 1994 Order dismissing Price's claims does have res judicata effect as to the enforcement of the Terms Agreement entered into by the parties.

## I. Background

### A. The Settlement Agreement

Price initially filed this action in 1991, alleging infringement of his patent, U.S. Patent No. 4,740,775, (the "Price Patent"), entitled Automobile Burglar Alarm. Just before the trial, the parties entered into a terms agreement (the "Terms Agreement"), which was entered by the Court on February 28, 1994. (See Judge Kocoras' February 24, 1994 Minute Order.) Under the Agreement, Price relinquished his right to a trial on the merits in consideration for Defendant's promise to pay royalties for certain products identified in the Terms Agreement, and Code Alarm's promise to pay him a percentage of any recovery in defense or prosecution of the Price Patent. (Terms Agreement, ¶¶ 2, 5, and 7.) Code Alarm also agreed to immediately pay Price $535,000, and to make payments to Price of $20,000 per month for twelve months, for a further total amount of $240,000. (Id. ¶ 4.) Code Alarm's obligation to pay future royalties under Paragraph 5 of the Agreement was limited to products covered by the patent claims which had features "substantially the same as represented by those features as they are embodied in [Code Alarm] models Pro 1000, Elite 1500 and Chapman 450." (Id., ¶ 9.)

In return, Price assigned to Code Alarm the rights to his patent. (Terms Agreement, ¶ 1.) Price also agreed to "cooperate with [Code Alarm] in connection with the enforcement of the Price Patent...." (Id., ¶ 6.) Price's obligation to assist Code Alarm with the patent enforcement included "appearance at reasonable times and notice at his deposition and for trial in actions relating to the Price Patent." (Id., ¶ 12.)

### B. Code Alarm's Litigation Against Other Parties

In 1995, Code Alarm filed suit against Directed Electronics, Inc. ("DEI"), a large seller of

2

car alarms. Code Alarm filed the DEI suit in the Southern District of California in San Diego and was assigned to Judge Barry Moskowitz.[1] While litigating against DEI, Code Alarm also filed suit against Alpine Electronics ("Alpine"). (Rand Mueller Aff., ¶ 10.) Code Alarm ultimately settled with Alpine for approximately 1.6 million dollars. (Id., ¶ 11.) Code Alarm also was in litigation with Kenwood Corporation ("Kenwood") and eventually entered into an agreement with Kenwood which required a payment of $100,000. After deducting attorney fees and other expenses, Code Alarm received slightly less than one million dollars from the Kenwood and Alpine settlements. (Id., ¶ 13.)[2]

In the fall of 1997, Code Alarm began its preparation for its trial against DEI, and its attorneys contacted Price's attorneys to secure his cooperation pursuant to the provisions of the Terms Agreement. (Timothy Vezeau Aff., ¶ 3.) Code Alarm contends that Price was uncooperative, and that he made numerous demands of Code Alarm in exchange for his cooperation, which were not required under the Terms Agreement. (Code Alarm's April 19, 1999 Mem. in Opposition to Pl.'s Mot. to Reopen, at 4.) The DEI trial began on February 24, 1998, and Code Alarm asserts that Price's failure to cooperate hampered the presentation of its case. (Id.) During the six week trial from February 24 to April 8, 1998, Judge Moskowitz construed the claims of the Price Patent on an ongoing basis. (*Directed Electronics, Inc. v. Code Alarm, Inc.*, Southern District of California, Cause No. 95-CV-0513-BTM, Rulings of February 28, March 5, and March 26, 1998.)[3] According

---

[1] This cause of action was *Directed Electronics, Inc. v. Code Alarm, Inc.*, Case No. 95-CV-0513-BTM.

[2] Shortly after entering into the Terms Agreement with Price, Code Alarm began an action against Audiovox, which was eventually settled for $300,000. Price has been paid his portion of the proceeds from this settlement. (Rand Mueller Aff., ¶ 7.)

[3] On August 13, 1999, Code Alarm provided this Court with a binder which contained copies of Judge Moskowitz' rulings, as well the April 8, 1998 Verdict and Special Interrogatories. (See Documents 5-10.)

3

to Code Alarm, the San Diego court construed the patent narrowly in part based upon certain of Price's unexplained documents. (Id. at 4-5.) On April 8, 1998, the jury concluded that the Price Patent claims were both invalid on several grounds and not infringed, as shown in the Verdict and Special Interrogatories entered on that date.

**C. The Parties' Positions**

Price now contends that he is owed a total of $1,336,048.84 by Code Alarm, based upon Code Alarm's failure to pay him royalties for 1995 and 1996 and its failure to pay him 35% of Code Alarm's 1997 settlement with Alpine Electronics for $932,500.00. Price argues that Code Alarm is required, under Paragraph 5 of the Terms Agreement, to pay him one dollar per licensed unit beginning in January, 1995, and that, to date, Code Alarm had only paid Price for royalties covering seven product models for 1995 and eight product models for 1996 out of 200 models manufactured and sold by Code Alarm. Price further requests his 35% of the Alpine Settlement in 1997 which Price claims totals $326,375.00 after costs and expenses.[4]

Code Alarm, on the other hand, makes numerous arguments in defense of its position that it owes Price nothing further under the Terms Agreement. It has already tendered to Price more than $775,000, pursuant to Paragraph 4 of the Terms Agreement. It argues that the Terms Agreement is not enforceable both because it does not contain "definite and certain terms," and because Price

---

[4] Price arrives at the total figure of $1,336,048.84 in this manner:
1) Pursuant to Paragraph 5 of the Terms Agreement Code Alarm owes him $388,475 in royalty payments for the year 1995 plus $214,591.25 in interest (computed at 1% per month compounded) for a total amount of $603,066.25 for the year 1995. Price contends he is owed $301,254.00 in royalties for the year 1996 plus $119,044.59 in interest for a total of $420,298.59 for the year 1996.
2) Pursuant to Paragraph 7 of the Terms Agreement, Price argues he is entitled to 35% of the total $932,500.00 settlement with Alpine in 1997, for a total amount, after deducting fees and costs of $326,375.00. After deducting $13,691.00 for royalty payment which Code Alarm admits come within the terms of the Terms Agreement, Price arrives at the figure of $1,336,048.84.
(Pl.'s March 22, 1999 Motion to Reopen, at 5.)

4

himself breached certain conditions of the agreement by failing to cooperate with Code Alarm in the DEI litigation. Code Alarm next argues that, even if the Terms Agreement is enforceable, Price is not owed any further payments based upon their agreement. Code Alarm contends that Price's claim for 35% of the Alpine recovery implicitly assumes that his recovery under Paragraph 7 of the Terms Agreement should be on a "per litigation" basis. According to Code Alarm, Paragraph 7 makes no such statement, and merely states that Price is entitled "35% of all monetary recovery after deduction for reasonable expenses related to the prosecution or defense of the Price Patent[.]" Code Alarm further argues that no "per unit" royalties under Paragraph 5 are owed because Price is only entitled to "$1 for each unit covered by the claims of the patent," and that the San Diego court found in its claim construction that the Price patent only covered alarm systems which interrupted power to a car's starter and ignition coil when it was armed. Code Alarm also contends that Paragraph 9 of the agreement further limits Price's recovery of royalties to "products having remote arm/disarm and starter-kill features substantially the same as models Pro 1000, Elite 1500 and Chapman 450," (Code Alarm's April 19, 1999 Memorandum in Opposition at 6-7), and that Code Alarm asserts that these limitations on the royalties owed negates its obligations under Paragraph 5 of the Terms Agreement, as none of its products are covered.

## II. Procedural History

In August 1996, Price brought his Sixth Motion to Enforce Terms of Settlement Agreement, which the Court granted, requiring Code Alarm to submit to a deposition and to produce documents relating to sales of the relevant products requested by Price's counsel in a February 10, 1996 letter. These documents were not turned over, prompting Price to file a further motion to compel. On March 10, 1997, Judge Kocoras entered a Memorandum Opinion which ordered Code Alarm to

5

make available all documents in its possession which it believed fulfilled Price's requests. However, the order also declined to award sanctions against Code Alarm finding that Price may have breached the portion of the Terms Agreement which required him to cooperate in Code Alarm's efforts to enforce the patent, and ordered Price to comply with that requirement found in paragraphs 6 and 12 of the Terms Agreement. (March 10, 1997 Memorandum Opinion at 5-6.)[5]

Apparently, Code-Alarm did not turn over the requested documents, which prompted Price to file, on March 22, 1999, his Motion to Reopen Case to Enforce Terms of Settlement Agreement Granting Partial Judgment, and an Order Compelling Discovery. The parties subsequently filed a series of briefs expanding upon their arguments on the issues raised in this motion. On February 2, 2000, upon consent of the parties, the case was reassigned to Magistrate Judge Nolan, pursuant to Local Rule 73.1. On March 9, 2000, Plaintiff's Motion to Reopen Case was withdrawn with leave to refile, based upon an anticipated settlement between the parties. When the parties failed to agree on a settlement, Price was granted leave to refile his Motion to Reopen, which he did on May 18, 2000. The Court also reinstated all previous pleadings relating to the motion to reopen which had

---

[5] Specifically, Judge Kocoras made the following findings in his opinion:
The court wishes to express its dismay at the alleged conduct of the parties in this case. The settlement was reached by the parties close to three years ago, and this is at least the seventh time that Price has found it necessary to file a motion regarding Code-Alarms' action (or inactions, as the case may be). Code-Alarm's alleged conduct is especially egregious, considering that it has been ordered numerous times to comply with the terms of a settlement which it freely entered to avoid an imminent and fast-approaching trial. In light of the allegations made by Price in this case, which Code-Alarm has failed to satisfactorily rebut, we find that Code-Alarm is in violation of our order of August 8, 1996 and grant Price's motion in this respect. Code-Alarm has demonstrated a pattern of disrespecting the settlement agreement and the orders of this court, and we will tolerate no further non-compliance.
However, we also find Code-Alarm's allegations that Price has failed to comply with the terms of the settlement merit consideration. It appears that neither party in this case is living up to the obligations they assumed when they entered into a settlement to avoid litigation, and we do not think that imposing monetary sanctions on Code Alarm is appropriate at this time. Taking Code-Alarm's claims as true, Price has also failed to conduct himself in a strictly upstanding manner, and we will not impose sanctions at this time.
(March 10, 1997 Memorandum Opinion at 4-5.)

been filed since March 19, 1999.

However, at the time Price refiled his Motion to Reopen, the parties jointly requested the Court to rule on one issue addressed in Price's motion prior to issuing its entire ruling on the motion as a whole. In his November 15, 1999 Memorandum in Support of his Motion to Reopen Case, Price contends that the finding of invalidity in the DEI litigation has no bearing on the enforceability of the Terms Agreement and that the agreement, as entered by Judge Kocoras on February 28, 1994, bars any such argument based on the grounds of res judicata. As reflected in the Court's Minute Order of April 28, 2000, the parties agreed that the Court should rule on the applicability of res judicata or estoppel prior to its consideration of the other issues raised in Price's motion. Therefore, the Court's ruling will be solely limited to this narrow issue.

### III. Analysis

In his November 15, 1998 Memorandum, Price asserts that Code Alarm cannot rely on the fact that the Price Patent was found to be invalid by the jury in the DEI litigation to support its arguments that the Terms Agreement is not enforceable. Price argues that Code Alarm negotiated to receive the rights to the patent, and that "it knew and acknowledged the strength and value of the property that it had bargained for pursuant to the Terms agreement." (Price's November 15, 1999 Memorandum in Support of Plaintiff's Motion to Reopen, at 6.) Price cites to two patent cases which address what effect a subsequent determination of invalidity has on a settlement agreement in which the parties have agreed upon the validity of a patent. See Schlegel Manufacturing Co. v. USM Corp., 525 F.2d 775 (6th Cir. 1976); Hemstreet v. Spiegel, Inc., 851 F.2d 348 (Fed. Cir. 1988). In both of these cases, the courts held that the subsequent finding of invalidity of the subject patent did not render any provision of a settlement agreement unenforceable. In Hemstreet, Defendant REI

7

agreed to settlement terms which required REI to makes payments to the plaintiff "notwithstanding that said patents-in-suit may be held invalid and/or unenforceable in any other proceeding at a later date[.]" When the patents were subsequently invalidated, the Federal Circuit held that "[h]aving specifically voluntarily agreed to make the payments even if the patents subsequently were held to be unenforceable, it ill behooves REI to renege on that commitment merely because the situation it contemplated has occurred." Id. at 350. The Schlegel court similarly held that the doctrine of res judicata barred the defendant from reviving and relitigating the issue of the validity of the subject patent. Schlegel, 525 F.2d at 781.

Code Alarm, however, does not challenge Price's position on this issue. Code Alarm asserts that it never argued that the Terms Agreement is unenforceable due to the invalidity of the Price Patent, and that it only discussed the patent's invalidity "to show that the Agreement must be understood in light of the respective positions of the parties." (Code Alarm's November 23, 1999 Memorandum in Opposition to Pl.'s Mot. to Reopen, at 2.) According to Code Alarm, it "has always known that the Price patent was of suspect validity" and that "Price's attempt to collect millions of additional dollars from Code Alarm cannot be squared with the known weakness of the Price patent." Id. Code Alarm believes that "[t]he primary significance of the trial in the United State Federal Court for the Southern District of California is not that the Price patent was held invalid and not infringed by modern day car alarm systems but, instead, that the California Court provided the only claim construction ever with respect to the Price patent." Id. Code Alarm maintains that, under Judge Moskowitz' claim construction, none of Code Alarm's products would be "covered by the claims" of the Price Patent under Paragraph 5 of the Terms Agreement.

As it appears that the parties are in agreement as to the res judicata effect of Judge Kocoras'

8

February 28, 1994 Order, there is no dispute on this issue to resolve. The Court concurs with the parties that the subsequent invalidation of the Price Patent does not render any of the provisions of the Terms Agreement unenforceable.[6] Furthermore, as in the Hemstreet case, the Terms Agreement itself contemplates the possibility of a subsequent finding of invalidity. In Paragraph 5, the parties agreed that the obligation of Code Alarm to pay royalties would cease after the date that certain claims of the patent were held to be invalid. Therefore, by the very provisions of the agreement, a subsequent finding of invalidity would have no effect on Code Alarm's obligation to pay royalties prior to that finding.

However, while the narrow issue of the res judicata effect of the Settlement Agreement is easily resolved, many issues which remain undecided by this Opinion. The parties' briefs depict two differing interpretations of the Terms Agreement. Paragraph 5 of the Terms Agreement provides that Code Alarm will pay one dollar "for each unit covered by the claims of the [the Price] patent." Code Alarm argues that this provision requires the Court to construe the claims of the Price Patent. In making its claim construction, according to Code Alarm, the Court may consider how the district court in San Diego construed the claims.[7] Price, on the other hand, argues that the Court does not

---

[6] Plaintiff argues, in the alternative, that Code Alarm is equitably estopped from attacking the claims of a patent after having enjoyed its benefits for four years. The Court does not reach this argument as it concurs with Price's position on the effect of the res judicata principle.

[7] Code Alarm is not arguing that issue preclusion applies, should this Court construe the Price Patent. The Court agrees. The doctrine of issue preclusion requires a court to honor the first actual decision of a matter that has been litigated. See Chicago Truck Drivers v. Century Motor Freight, 125 F.3d 526, 530 (7th Cir.1997) (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4416, at 136 (1981 & Supp.1997)). Generally, issue preclusion is appropriate if: (1) the issue sought to be litigated is identical to one decided in a prior action; (2) that issue was actually litigated in the first action; (3) the determination of the issue was essential to the final judgment in the first action; and (4) the party against whom estoppel is invoked had a full and fair opportunity to litigate the issue in the first action. Century, 125 F.3d at 530 (citing La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V., 914 F.2d 900, 906 (7th Cir.1990)). As Price was not a party in the California litigation, the fourth criteria would not be met. However, the Court would still be able to consider the California court's construction in reaching its own decision as to claim construction.

have to construe the claims of the patent because the parties reached agreement as to claim construction for purposes of enforcing the Terms Agreement. Price avers that the parties intended Paragraph 5 to be modified by the provision in Paragraph 9 of the Agreement, which states:

> For purposes of this agreement and determining the products on which payments under paragraph 5 will be due, products of CA having remote arm and disarm and starter kill features substantially the same as represented by those features as they are embodied in CA models Pro 1000, Elite 1500 and Chapman 450 and the corresponding schematic _____, a copy of which shall be initialed and dated by Price's attorney and retained by the office of Fishman & Merrick for the term of the agreement.

According to Price, Paragraph 9 represents the parties' agreement as to which claims were covered by the patent, and that therefore Code Alarm's arguments regarding claim construction are unnecessary. (See Pl.'s Reply to Code Alarm's Surreply, filed Aug. 11, 1999, at 4-5.)

This opinion does not resolve this dispute between the parties, and the Court is making no finding as to which party's interpretation of the Terms Agreement will prevail. Should the Court find in favor of the Code Alarm on this issue, the Court may still be required to construe the claims of the Price Patent. In doing so, the Court may consider the claim construction provided by Judge Moskowitz. If the Court is required to construe the claims, an evidentiary hearing would almost certainly be required.[8] Should the Court find in favor of Price on this issue, then Paragraph 9 of the Terms Agreement would govern the Code Alarm products on which royalties would be owed. However, in order to determine the parties' intent as to the meaning of Paragraph 9, an evidentiary hearing may still be necessary. A third possibility is the Court could find that the Terms Agreement is ambiguous as to whether Paragraph 9 encompasses the parties' definition of "covered by the

---

[8] In fact, the Court could be required to conduct a Markman hearing, pursuant to Markman v. Westview Instruments, Inc., 517 U.S. 370(1996).

claims of the patent" in Paragraph 5, in which case it would consider extrinsic evidence in order to ascertain the parties' intent.[9] Ultimately, resolution of this issue could also require an evidentiary hearing.

IV. Conclusion

The Court finds that the determination of invalidity in the DEI litigation does not render the Terms Agreement unenforceable, and that Judge Kocoras' February 28, 1994 Order does have res judicata effect as to the enforcement of the Terms Agreement entered into by the parties.

This matter is set for a Status Hearing on **Friday, October 5, 2001 at 9:00 a.m.**

ENTER:

*Nan R. Nolan*

Nan R. Nolan
**United States Magistrate Judge**

Dated: SEP 2 8 2001

---

[9] Both parties agree that Illinois contract law governs the enforceability of the Terms Agreement. Carr v. Runyon, 89 F.3d 327, 331 (7th Cir. 1996). Under Illinois law, a contract is ambiguous if it is susceptible to more than one meaning. Bishop v. Lakeland Animal Hospital, P.C., 644 N.E.2d 33 (Ill. Ct. App. 1994). See also Thomas v. Pearle Vision, Inc., 251 F.3d 1132, 1136 (7th Cir. 2001) ("Under Illinois law a genuine issue of material fact exists in contract cases when a key provision of a contract is ambiguous, requiring admission of extrinsic evidence.")

11