Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 91 C 699 | **DATE** | 8/12/2002 |
| **CASE TITLE** | Reese Price vs. Code-Alarm, Inc., et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Plaintiff Reese Price's Motion to Reopen Case to Enforce Terms of Settlement Agreement [266-1], Granting Partial Judgment [266-2], and an Order Compelling Discovery [266-3] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | AUG 13 2002 | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | 274 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 8/2/2002 | |
| | | date mailed notice | |
| KMc | courtroom deputy's initials | KMc | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

REESE PRICE, an individual, )
)
        Plaintiff, )
)
v. ) Case No. 91 C 0699
)
) Magistrate Judge Nan R. Nolan
CODE-ALARM, INC., and TRIANGLE )
MOBILE ELECTRONICS, )
)
        Defendants. )

DOCKETED
AUG 1 3 2002

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Reese Price's Motion to Reopen Case to Enforce Terms of Settlement Agreement, Granting Partial Judgment, and an Order Compelling Discovery (Docket Entry #266). Price initially filed this action in 1991 against Defendant Code-Alarm, Inc.,[1] alleging infringement of his car alarm patent—U.S. Patent No. 4,740,775, (the "Price Patent"). On the eve of trial, the parties settled the case. In his current motion, Price argues that Code-Alarm breached the settlement agreement by failing to pay Price approximately $1,000,000 in royalty payments and approximately $325,000 under a provision that required Code-Alarm to pay Price 35% of all monetary recovery related to the prosecution or defense of the Price Patent. Code-Alarm contends that it does not owe Price anything because Price breached the settlement agreement by refusing to cooperate in litigation related to the Price Patent. Alternatively, Code-Alarm argues that Price is not entitled to any royalty payments because none of its products are covered by the Price Patent and that

---

[1] Price sued Code-Alarm and Triangle Mobile Electronics. Price and Triangle have since settled their differences and that settlement is not at issue in this case.

274

Price is not entitled to any further payments under the 35%-of-all-monetary-recovery provision of the agreement. For the following reasons, the Court DENIES Price's motion.

## JURISDICTION

A motion to enforce a settlement agreement—which is essentially a claim for breach of contract—does not state a basis for federal jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381 (1994). However, a court may exercise ancillary jurisdiction to enforce a settlement agreement if the court retained jurisdiction over the settlement agreement or entered a judgment explicitly incorporating the terms of the settlement. *Lucille v. City of Chicago*, 31 F.3d 546, 548 (7th Cir. 1994); *see also Lynch v. Samatamason*, 279 F.3d 487, 489 (7th Cir. 2002). In this case, the District Court's order dated February 28, 1994 states: "Cause is hereby dismissed with leave to reinstate within 30 days if settlement not effectuated. The court retains jurisdiction to enforce the terms of the settlement." (Docket Entry #188.) Accordingly, the District Court had jurisdiction to rule on Price's motion to enforce the settlement agreement. The parties have since consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## BACKGROUND

### A. The Settlement Agreement

Pursuant to the settlement agreement: Price agreed to (i) dismiss his suit against Code-Alarm, (ii) transfer his rights in the Price Patent to Code-Alarm, and (iii) cooperate with Code-Alarm's efforts to enforce the Price Patent. Code-Alarm agreed to pay Price (i) $775,000, (ii) a $1.00 royalty for each unit covered by the Price Patent that Code-Alarm sells after January 1, 1995, and (iii) 35% of all monetary recovery (minus expenses and attorneys' fees) related to the prosecution or defense

2

of the Price Patent. The current dispute concerns the royalty provision, the 35%-of-all-monetary-recovery provision and the cooperation provision. Those provisions state as follows:

**1. Royalty Provision**

Paragraph 5 of the settlement agreement states that "[Code-Alarm] will pay $1 for each unit covered by the claims of patent which it sells after January 1, 1995." Paragraph 9 explains which Code-Alarm products fall within the language of paragraph 5:

> For purposes of this agreement and determining the products on which payments under paragraph 5 will be due, products of [Code-Alarm] having remote arm and disarm and starter kill features substantially the same as represented by those features as they are embodied in [Code-Alarm] models Pro 1000, Elite 1500 and Chapman 450 and the corresponding schematic _____,[2] a copy of which shall be initialled [sic] and dated by Price's attorney and retained by the office of Fishman & Merrick for the term of the agreement.

**2. 35%-of-All-Monetary-Recovery Provision**

Paragraph 7 of the settlement agreement states that "[Code-Alarm] will pay to Price 35% of all monetary recovery after deduction for reasonable expenses related to the prosecution or defense of the Price Patent, including w/o limitation attorneys fees."

**3. Cooperation Provision**

Paragraph 6 of the settlement agreement states that "Price will cooperate with [Code-Alarm] in connection with the enforcement of the Price Patent to a reasonable extent at no expense to him and without charge to [Code-Alarm]." Paragraph 12 further states that:

> Price's obligation to cooperate with [Code-Alarm] shall include, but not be limited to, appearance at reasonable times and notice at his deposition and for trial in actions relating to the Price Patent. If Price shall unreasonably fail or refuse to appear, [Code-Alarm] may withhold the portion of the payment due to him hereunder under paragraph 5 hereof until such time as he does so appear and cooperate.

---

[2] The parties agree that there is no corresponding schematic.

## B. Code-Alarm's Litigation Against Other Parties

Shortly after entering into the settlement agreement with Price, Code-Alarm began an action against Audiovox, which was eventually settled for $300,000. Code-Alarm paid Price a portion of the Audiovox settlement. (Rand Mueller Aff. ¶¶ 6-7.)[3] In 1995, Code-Alarm filed suit against Directed Electronics, Inc. ("DEI"), a large seller of car alarms.[4] (*Id.* ¶ 9.) While litigating against DEI, Code-Alarm also filed suits against Alpine Electronics and Kenwood Corporation. (*Id.* ¶¶ 10, 12.) Code-Alarm ultimately settled with Alpine for approximately $1,500,000 and with Kenwood for approximately $100,000. (*Id.* ¶¶ 11-12.) Code-Alarm spent approximately $700,000 in expenses and attorneys' fees related directly to the Alpine and Kenwood settlements. (*Id.* ¶ 13.)

In the fall of 1997, Code-Alarm's attorneys contacted Price's attorneys to secure Price's cooperation in connection with the DEI litigation pursuant to the provisions of the settlement agreement. Code-Alarm contends that Price was uncooperative; specifically, that he conditioned his cooperation on Code-Alarm meeting numerous demands which were not required under the settlement agreement. (Timothy J. Vezeau Aff. ¶¶ 3-13, 16-17.)[5] Price states that he fully cooperated in connection with the DEI trial. (Reese Price Aff. ¶¶ 9-20; James J. Hill Aff. ¶¶ 9-34.)[6] Code-Alarm asserts that Price's failure to cooperate hampered the presentation of its case in the DEI matter. According to Code-Alarm, the District Court handling the DEI trial construed the Price

---

[3] Rand Mueller is the president of Code Alarm.

[4] This cause of action was *Directed Electronics, Inc. v. Code-Alarm, Inc.*, No. 95-CV-0513-BTM, which was filed in the United States District Court for the Southern District of California.

[5] Timothy J. Vezeau was lead trial counsel for Code-Alarm in the DEI litigation.

[6] James J. Hill represented Price at the time of the DEI litigation.

4

Patent narrowly based in part upon certain of Price's unexplained documents. (Vezeau Aff. ¶¶ 13.) In April, 1998, the jury concluded that the Price Patent claims were both invalid on several grounds and not infringed. (*Id.* ¶¶ 15-16.) Code-Alarm spent approximately $1,750,000 in expenses and attorneys' fees directly related to the DEI litigation. (Mueller Aff. ¶ 13.)

## C. Procedural History

The parties settled Price's lawsuit against Code Alarm in the spring of 1994. During the next two and a half years, Price filed with the District Court six motions to enforce that settlement agreement. The District Court ruled on all of those motions. (See unpublished orders dated Mar. 24, 1994 (Docket Entry #191), Apr. 6, 1994 (Docket Entry #193), July 6, 1994 (Docket Entry #198), Mar. 30, 1995 (Docket Entry #201), Sep. 21, 1995 (Docket Entry #206), and Aug. 8, 1996 (Docket Entry #212).) In March 1999, Price filed with the District Court his seventh motion to enforce the 1994 settlement agreement. The District Court referred that motion to this Court in June 1999. This Court gave the parties until December 1999 to conduct depositions of the other party's expert witnesses.

Based on representations from the parties indicating that a settlement may be possible, this Court held two settlement conferences in January and February 2000. At the second of these conferences, the parties indicated that they had reached an agreement. Shortly thereafter, the parties consented to the jurisdiction of the United States Magistrate Judge and Price withdrew his seventh motion to enforce the 1994 settlement. Unfortunately, the parties were not able to finalize the February 2000 settlement and, in May 2000, Price re-filed his most recent motion to enforce the settlement agreement. The Court granted the defendant's request to conduct further discovery.

5

In 2001, the parties informed the Court that they may be able to reach an agreement if the Court ruled on the limited issues of res judicata and collateral estoppel. In September 2001, the Court issued a partial ruling limited to those two issues. *Price v. Code Alarm, Inc.*, No. 91 C 0699, 2001 WL 1155289 (N.D. Ill. Oct. 1, 2001). In early November 2001, the Court held a third settlement conference. Again the parties failed to reach an agreement.

When it became apparent that the parties could not settle their differences, the Court informed the parties that it would issue a ruling on Price's entire motion. The parties advised the Court that there were factual disputes regarding the following two issues: (1) whether Price cooperated with Code Alarm's efforts to enforce the Price Patent, and (2) whether any Code-Alarm products are "unit[s] covered by the claims of [the Price] patent" for purposes of the royalty provision of the settlement agreement. Regarding the first issue, the Court held an evidentiary hearing on Price's alleged failure to cooperate with Code-Alarm's efforts to enforce the Price Patent. (See Tr. Nov. 28, 2001 Evid. Hr'g.) Regarding the royalty issue, Price attached to his motion an affidavit by John T. Keefe, an electric engineer, stating that certain Code-Alarm products were "unit[s] covered by the claims of [the Price] patent" for purposes of the royalty provision of the settlement agreement. The Court informed Price that Keefe's affidavit did not meet the requirements of Federal Rule of Civil Procedure 26(a)(2)(B) and that Price would have to submit a proper expert report explaining each of Keefe's conclusions. (*Id.* at 191-92.) To facilitate preparation of the expert report, the Court granted Price's discovery requests contained in his motion to enforce the settlement agreement. (*Id.* at 188-93.) The Court set a deadline of January 31, 2002, for Price to submit an expert report on the royalty issue. (*Id.* at 193-94.) When Price failed to tender an expert report on that date, the Court extended the deadline to March 29, 2002. (See unpublished order

6

dated Feb. 12, 2002 (Docket Entry #272).) Price again failed to produce an expert report on the royalty issue.

In May 2002, the parties indicated that they may be able to settle the case. Later that month, the parties informed the Court that no settlement was reached. The Court is now prepared to rule on Price's motion.

## DISCUSSION

Price's motion presents two issues: (1) whether Code-Alarm owes Price any royalty payments under the settlement agreement, i.e., whether any Code-Alarm products are "unit[s] covered by the claims of [the Price] patent"; and (2) whether Code-Alarm owes Price any money under the 35%-of-all-monetary-recovery provision of the settlement agreement. Code-Alarm contends that it does not owe Price any money under the settlement agreement. Additionally, Code-Alarm argues that the Court should rescind the settlement agreement based on Price's refusal to cooperate with Code-Alarm's efforts to enforce the Price Patent.

### A. Royalty Provision

Under the settlement agreement, Code-Alarm agreed to pay Price "$1 for each unit covered by the claims of patent." The agreement defines "unit covered by the claims of patent" as "[Code-Alarm products] having remote arm and disarm and starter kill features substantially the same as represented by those features as they are embodied in [Code-Alarm] models Pro 1000, Elite 1500 and Chapman 450 and the corresponding schematic _____."[7] Price argues that Code-Alarm owes him approximately $1,000,000 in royalty payments for Code-Alarm products sold during the years 1995 and 1996. In response, Code-Alarm argues that Price has failed to meet his burden of

---

[7] As noted previously, the parties agree that there is no corresponding schematic.

7

establishing that any Code-Alarm product sold during 1995 and 1996 meets the definition of a "unit covered by claims of patent." The Court agrees that Price has not introduced evidence sufficient to meet his burden of proof.

In support of his argument that certain Code-Alarm products fall under the settlement agreement's "unit covered by the claims of patent" definition, Price relies on the affidavit of John T. Keefe, an electrical engineer. Code-Alarm argues that Keefe's opinions are inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because Keefe's affidavit provides only bare conclusions without any analysis.

In *Daubert*, the Supreme Court provided a non-exhaustive list of factors courts could consider when determining whether to admit expert testimony, including whether the opinion can be (and has been) tested, whether it has been subjected to peer review and publication, whether there is a known or potential error rate, and whether it is generally accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593-94. Although the factors listed in *Daubert* are useful guideposts in determining whether to admit expert testimony, a litigant's failure to establish these factors does not necessarily mean that an expert's opinion is inadmissible. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). All that is required is that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The critical inquiries are whether "the expert testimony at issue 'both rests on a reliable foundation and is relevant to the task at hand.'" *United States v. Cruz-Velasco*, 224 F.3d 654, 660 (7th Cir. 2000) (quoting *Daubert*, 509 U.S. at 597). The Supreme Court's holdings in *Daubert* and *Kumho Tire* have been codified in Federal Rule of Evidence 702, which provides that:

8

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). With these principles in mind, the Court turns to Keefe's affidavit.

Code-Alarm is correct that Keefe's three-page affidavit provides only bare conclusions. Paragraph 7 of the affidavit states:

> In comparing the Code-Alarm models to those models identified in the Terms of Settlement, I have determined that Code-Alarm manufactured or sold 383,475 units in calendar year 1995 which had remote arm and disarm and starter kill features substantially the same as those features in Code-Alarm models Pro-1000, Elite 1500 and Chatman [sic] 450, which are referenced in paragraph 9 of the Terms of Settlement. I have further determined that Code-Alarm sold 301,254 such units in calendar year 1996 which have features that correspond to those features set forth in paragraph 9 of the Terms of Settlement.

Keefe's affidavit contains no explanation of *how* Keefe reached his conclusions. At the November 28, 2001, Evidentiary Hearing, the Court warned Price that Keefe's affidavit was not an acceptable expert report under Rule 26 because it contained only conclusory statements. (Tr. Nov. 28, 2001 Evid. Hr'g at 191.) The Court told Price that he had to submit an expert report explaining why certain Code Alarm models were royalty-bearing according to the settlement agreement, i.e., explaining why his expert concluded that certain models have remote arm and disarm and starter kill features that are embodied in substantially the same manner as in Code-Alarm models Pro 1000, Elite 1500 and Chapman 450. (*Id.*) A few minutes later, the Court reaffirmed this point when it stated that "[Mr. Keefe must] follow Rule 26 on expert reports." (*Id.* at 192.) Despite the Court's

explicit warning, Price failed to submit an expert report. Accordingly, the Court must determine whether Keefe's affidavit satisfies the requirements of Federal Rule of Evidence 702.

In assessing proffered expert testimony, a court must first determine whether the expert's testimony is based on a reliable methodology. *Clark v. Takata Corp.*, 192 F.3d 750, 756 (7th Cir. 1999). In this case, Keefe's affidavit provides no methodology. The affidavit simply states that Keefe compared Code-Alarm products to the models enumerated in the settlement agreement and concluded that Code-Alarm owes royalties on a certain number of those products. The affidavit does not explain *how* Keefe determined that those models meet the definition provided in the settlement agreement, i.e., it does not explain Keefe's understanding of the terms of settlement agreement nor his method of analyzing the Code-Alarm products at issue. The Seventh Circuit has held that experts must substantiate their opinions; an expert that provides only an ultimate conclusion with no analysis "supplies nothing of value to the judicial process." *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997); *see Clark*, 192 F.3d at 757-59. Because Keefe's affidavit contains only ultimate conclusions with no analysis, the Court holds that Price cannot use Keefe's affidavit to meet his burden of establishing that Code-Alarm owes him royalty payments under the settlement agreement.

After warning Price that Keefe's affidavit was not an acceptable expert report on the royalty issue, the Court provided Price two opportunities to tender an acceptable expert report. Price failed to submit a report each time. Because Keefe's affidavit does not meet the requirements of Federal Rule of Evidence 702 and because Price failed to offer any other evidence supporting his royalty argument, the Court concludes that Price has failed to establish that Code-Alarm owes him any royalty payments under the settlement agreement.

10

## B. 35%-of-All-Monetary-Recovery Provision

Paragraph 7 of the settlement agreement states that "[Code-Alarm] will pay to Price 35% of all monetary recovery after deduction for reasonable expenses related to the prosecution or defense of the Price Patent, including w/o limitation attorneys fees." The parties dispute whether Code-Alarm owes Price money from Code-Alarm's settlement with Alpine Electronics. Essentially, this dispute boils down to which party's interpretation of the settlement agreement is correct. Price's "per litigation" argument contends that he is entitled to 35% of *each* of the *individual* monetary *recoveries* related to the prosecution or defense of the Price Patent and that Code-Alarm may deduct only expenses and attorneys' fees related to that particular prosecution or defense. According to Price, he is entitled to a percentage of the Alpine settlement regardless of whether Code-Alarm lost money on other litigation related to the Price Patent. On the other hand, Code-Alarm's "net recovery" argument contends that Price is entitled to 35% of "all" monetary recovery related to the prosecution or defense of the Price Patent after deducting expenses, including without limitation attorneys' fees. According to Code-Alarm, Price is not entitled to any money from the Alpine settlement because Code-Alarm did not realize a profit from all of the litigation related to the prosecution or defense of the Price Patent.

"A motion to enforce a settlement agreement is essentially the same as a motion to enforce a contract." *Porter v. Chicago Bd. of Educ.*, 981 F. Supp. 1129, 1131 (N.D. Ill. 1997) (internal quotation and citation omitted); *see Solar v. Weinberg*, 653 N.E.2d 1365, 1368 (Ill. App. Ct. 1995). Illinois courts follow the "four corners" rule of contract interpretation.[8] Under this rule, the court interprets contractual terms by looking at the language of the contract. *Air Safety, Inc. v. Teachers*

---

[8] The Court and both parties agree that Illinois law governs this dispute.

11

*Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999). The court must consider the entire contract, not just isolated provisions. *Premier Title Co. v. Donahue*, 765 N.E.2d 513, 516 (Ill. App. Ct. 2002). If a contractual term is unambiguous, the court applies the plain, ordinary meaning of that term. *Id.* A contractual provision is not ambiguous merely because the parties do not agree on the meaning of the provision, *Forest Glen Community Homeowners Ass'n. v. Bishof*, 746 N.E.2d 1285, 1289 (Ill. App. Ct. 2001); *Thomas v. Pearle Vision, Inc.*, 251 F.3d 1132, 1138 (7th Cir. 2001) (applying Illinois law), or because the provision is not defined in the contract, *Winter v. Minnesota Mutual Life Insurance Co.*, 199 F.3d 399, 408 (7th Cir. 1999) (applying Illinois law). A contractual term is ambiguous only if it is reasonably or fairly susceptible to more than one meaning. *Allied Asphalt Paving Co. v. Village of Hillside*, 731 N.E.2d 425, 429 (Ill. App. Ct. 2000); *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998) (applying Illinois law). Therefore, the Court must determine whether the 35%-of-all-monetary recovery provision is reasonably susceptible to the interpretations urged by the parties.

The Court concludes that Code-Alarm's interpretation of the 35%-of-all-monetary-recovery provision is the only reasonable interpretation advanced by the parties. The problem with Price's interpretation is that it ignores the plain and ordinary meaning of the relevant provision. A court interpreting a contract must apply the plain and ordinary meaning of the contract terms. *Donahue*, 765 N.E.2d at 516. It is well established that "where the terms of a contract are clear and unambiguous, they must be enforced as written, and no court can rewrite a contract to provide a better bargain to suit one of the parties." *Owens v. McDermott, Will & Emery*, 736 N.E.2d 145, 154 (Ill. App. Ct. 2000).

12

Price argues that the Court should read the provision as stating that he is entitled to 35% of *each* of the *individual* monetary *recoveries* related to the prosecution or defense of the Price Patent. However, the relevant provision states something quite different; it states that Price is entitled to "35% of *all* monetary *recovery*." (emphasis added). Significantly, the word "each" does not appear in the relevant provision and the word "recovery" is in the singular rather than the plural form. *Black's Law Dictionary* states that "'[a]ll' refers rather to the aggregate under which the individuals are subsumed than to the individuals themselves." *Black's Law Dictionary* 74 (6th ed. 1990). The plain and ordinary meaning of this provision is that Price is entitled to 35% of the aggregate monetary recovery related to the prosecution or defense of the Price Patent, not 35% of the individual monetary recoveries. Price could have very easily bargained for a settlement agreement that entitled him to 35% of each of the individual monetary recoveries related to the prosecution or defense of the Price Patent. He chose not to do so. The Court will not remedy his mistake.

Price argues that Code-Alarm's interpretation is unreasonable because that interpretation would grant Code-Alarm "unbridled discretion in filing lawsuits attempting to recover based on the Price Patent because the company would be assured that any amount of attorney's fees would be offset by Price's potential entitlement." (Pl.'s Resp. to Def.'s Mem. in Opposition to Pl.'s Mot. at 3.) Even if the Court were to assume that this statement were true, Price's argument does not establish that Code-Alarm's interpretation is unreasonable. To the contrary, Price's argument supports the Court's decision. Paragraph 6 of the settlement agreement states that "[t]he determination whether, when and who, if anyone, to sue under the Price Patent, and the terms of any settlement or license shall be solely and exclusively in the discretion of [Code-Alarm]." Despite Price's statements to the contrary, the fact that Code-Alarm's interpretation is entirely consistent

13

with another provision of the contract indicates that Code-Alarm's interpretation is reasonable. *Roubik v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 674 N.E.2d 35, 37 (Ill. App. Ct. 1996) (collecting cases stating that "[a] cardinal rule of contract construction is that a document should be read to give effect to all its provisions and to render them consistent with one another").

It is undisputed that the Code-Alarm did not realize a net profit in litigation related to the Price Patent, i.e., it is undisputed that the value of "all monetary recovery after the deduction for reasonable expenses related to the prosecution or defense of the Price Patent" is less than zero. Applying the plain and ordinary meaning of the language of the relevant provision, the Court concludes that Price has not established that he is entitled to any payments under the 35%-of-all-monetary-recovery provision.

## C. Cooperation Provision

Code-Alarm also argues that the Court should rescind the settlement agreement because Price breached a material term of that agreement when he refused to cooperate in the DEI litigation. The problem with this argument is that it ignores the following language from paragraph 12 of the settlement agreement that limits Code-Alarm's remedy in the event of Price's failure to cooperate:

> Price's obligation to cooperate with [Code-Alarm] shall include, but not be limited to, appearance at reasonable times and notice at his deposition and for trial in actions relating to the Price Patent. If Price shall unreasonably fail or refuse to appear, [Code-Alarm] may withhold the portion of the payment due to him hereunder under paragraph 5 hereof until such time as he does so appear and cooperate.

Consistent with the strong public policy favoring freedom of contract, "[i]n Illinois, parties can limit remedies and damages for breach if their agreement so states and no public policy bar exists." *Rayner Covering Sys., Inc. v. Danvers Farmers Elevator Co.*, 589 N.E.2d 1034, 1037 (Ill. App. Ct. 1992). Code-Alarm has not identified any public policy that would bar application of the parties'

14

agreed-upon remedy for Price's refusal to cooperate. Accordingly, the Court rejects Code-Alarm's recission argument.

The Court does not need to determine whether Price cooperated with Code-Alarm's efforts to enforce the Price Patent. Pursuant to the above-quoted language from paragraph 12 of the settlement agreement, whether Price cooperated with Code-Alarm's litigation efforts is relevant only if Code-Alarm owes Price royalty payments under paragraph 5 of that agreement. Because the Court determined that Price failed to establish that Code-Alarm owes him any royalty payments pursuant to the settlement agreement, *supra* at 7-10, the Court concludes that it is not necessary to determine whether Price cooperated with Code-Alarm's efforts to enforce the Price Patent.

**D. Waiver**

All arguments that have not been raised by the parties have been waived. *Belom v. Nat'l Futures Assoc.*, 284 F.3d 795, 799 (7th Cir. 2002) (stating that arguments not raised in the district court are waived); *Pohl v. United Airlines, Inc.*, 213 F..3d 336, 340 (7th Cir. 2000) (collecting cases stating that arguments against the enforceability of settlement agreements are waived if not raised in the district court). In this case, the Court repeatedly granted requests for discovery and for extensions of time. The parties had numerous opportunities to present arguments and evidence to the Court. At the November 28, 2001, Evidentiary Hearing, the Court *sua sponte* granted the parties leave to submit supplemental legal memoranda if they so desired. (Tr. Nov. 28, 2001 Evid. Hr'g at 201.) The Court will not entertain any further arguments from the parties.

## CONCLUSION

For the foregoing reasons, the Court DENIES Price's motion.

ENTER:

*Nan R. Nolan*

**Nan R. Nolan**

**United States Magistrate Judge**

Dated: Aug 12, 2002